OPINION OF THE COURT
Ferris D. Lebous, J.
Plaintiffs Town of Union and Village of Johnson City have commenced this action against defendant Time Warner Entertainment — Advance/Newhouse Partnership, doing business as Time Warner Cable, for breach of contract arising from cable television franchise agreements.
Plaintiff Town of Union moves for summary judgment on the complaint alleging breach of contract and for a judgment in the amount of $525,022.59. Plaintiff Village of Johnson City also *428 moves for summary judgment on the complaint alleging breach of contract and for a judgment in the sum of $481,517.50.
Defendant Time Warner opposes the motion and cross-moves for summary judgment on its counterclaim for moneys had and received by plaintiffs.
As discussed with counsel at oral argument, this decision and order is limited to the issue of the effective date of the subject cable television franchise agreements. All other issues raised such as the calculations of gross revenues and franchise fees, interest rates, and late payment fees will be addressed, if necessary, as part of a later scheduled inquest.
Background
The subject contracts at issue are cable television franchise renewal agreements entered into between each of the respective municipalities and Time Warner. The franchise agreement between the Town and Time Warner was signed by the Town on July 2, 2008. The franchise agreement between the Village and Time Warner was signed by the Village on July 15, 2008. The Public Service Commission (PSC) approved both franchise agreements on January 2, 2009.
As agreed, the sole issue before the court on these motions is whether the franchise agreements became effective as of the date of approval by the Town and Village (July 2, 2008 and July 15, 2008, respectively) or the date of the Public Service Commission’s approval (Jan. 2, 2009). The relevant provisions of the franchise agreements on this limited issue are as follows:
“SECTION 1 — DEFINED TERMS . . .
“(f) ‘Effective Date’ of this agreement shall be the date of approval by the municipality. . . .
“SECTION 19 — SEVERABILITY, GOVERNING LAW, POLICE POWERS REQUESTS FOR AUTHORIZATION AND NON-DISCRIMINATION. . .
“(g) The terms of the franchise are subject to the approval of the Public Service Commission (PSC).” (Plaintiffs’ exhibits A, O.)
Obviously, the calculations of the amounts due and owing under the franchise agreements vary greatly depending on whether the approximate six-month gap between municipal approval and Public Service Commission approval is factored into said totals.
*429 This action was commenced by the filing of a summons and complaint on May 22, 2013. Defendant interposed an answer with counterclaims on July 31, 2013. The court heard oral argument from counsel on February 5, 2016.[1]
Discussion
I. Law
A party moving for summary judgment must make a prima facie case by presenting evidentiary facts showing entitlement to judgment as a matter of law, offering sufficient evidence to demonstrate the absence of any material issue of fact (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067-1068 [1979]). Once the burden shifts, the opposing party must present evidentiary proof in admissible form that demonstrates the existence of a factual issue (Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The court must accept the non-moving party’s evidence as true and grant her every favorable inference (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). The parties agree that the sole issue presented for resolution is the proper effective date of these franchise agreements and that said determination involves only questions of law.
With respect to contract interpretation, it is well-settled that
“the primary rule of construction of contracts [is] that when the terms of a written contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and the parties’ reasonable expectations” (Slamow v Del Col, 174 AD2d 725, 726 [2d Dept 1991], affd 79 NY2d 1016 [1992] [citations omitted]).
A “written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms” (Greenfield v Philles Records, 98 NY2d 562, 569 [2002] [citations omitted]). A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases (South Rd. Assoc., LLC v International Bus. Machs. Corp., 4 NY3d 272, 277 [2005]). Finally, it is also well- *430 settled that contract ambiguities should be construed against the drafter (Matter of Dube v Horowitz, 258 AD2d 724 [3d Dept 1999]).
II. Contract Interpretation
Plaintiffs contend that the terms of these franchise agreements are clear and unambiguous as to the effective date by stating the “[effective [d]ate of this agreement shall be the date of approval by the municipality” (plaintiffs’ exhibits A, O; section 1 [f]).
Time Warner argues that the terms of the franchise agreements are ambiguous as to their effective dates because a conflict exists between section 1 (f) (“ [effective [d]ate of this agreement shall be the date of approval by the municipality”) and section 19 (g) (“]t]he terms of the franchise are subject to the approval of the Public Service Commission”).
According to Time Warner these provisions create a conflict between the contractual language and Public Service Law § 222. More specifically, Public Service Law § 222 (1) states that “[n]o transfer, renewal or amendment of any franchise . . . shall be effective without the prior approval of the commission. Such approval shall be required in addition to any municipal approval required under the franchise or by law.” Thus, Time Warner argues that the statutory provisions of Public Service Law § 222 do not permit said agreements to be effective upon municipal approval.
This court finds that the franchise agreements are clear and unambiguous in that they unequivocally state that their effective dates are the date of municipal approval under section 1 (f) thereof.[2] Further, the court finds that the terms of the franchise agreements are not contrary to public policy and do not contradict Public Service Law § 222. Rather, the court finds that section 19 of the franchise agreements (that the terms of said agreements are subject to the approval of the PSC) is nothing more than a condition subsequent. It is well-settled that “[a] condition subsequent does not delay the enforceability of a contract; it only preserves the possibility that a contract can be set aside later in time if the condition is not fulfilled” (Matter of Benincasa v Garrubbo, 141 AD2d 636, 638 [2d Dept *431 1988] [citations omitted]).[3] In sum, contrary to Time Warner’s arguments, there is no ambiguity in these franchise agreements with respect to their effective dates nor is there any public policy violation.
III. Fallsburg
The parties’ second argument revolves around the PSC’s Fallsburg agency determination entitled Application of Time Warner Cable (Liberty Div.) for Approval of Renewal of its Cable Television Franchise for the Town of Fallsburg (Sullivan County) (case 01-V-0201, June 2, 2008) (referred to herein simply as Fallsburg). Plaintiff argues that Fallsburg is controlling. Time Warner argues that Fallsburg is factually distinguishable from the case at bar and that in any event such agency determinations are not entitled to any deference by the courts.
In Fallsburg, the PSC addressed whether the term of an agreement should run from the date of PSC approval or the effective date as stated in the agreement as of the parties’ signature. The PSC determination states, in pertinent part, as follows:
“The agreement further provides that the Town of Fallsburg and Time Warner agree that they are bound by and must comply with the franchise agreement from the effective date until the date of Commission confirmation. The Commission does not require that the term of an agreement run from the date of Commission approval. In addition, the Town of Fallsburg Resolution, dated December 26, 2000, allows a ten year term. The franchise agreement, by its plain language, provides for a ten year term from the effective date of the parties’ signatures, January 29, 2001.” (.Fallsburg at 4.)
Time Warner argues that Fallsburg is factually distinguishable from the case at bar because the Fallsburg agreement contained specific language that the parties agreed to be bound for the interim period between the effective date and the date of the PSC approval. On one hand, Time Warner argues that Fallsburg does not govern here because the case at bar does not include the so-called magic language that the parties had expressly agreed to be bound for the interim period prior to the date of PSC approval. On the other hand, Time Warner argues *432 that even if these agreements did contain the Fallsburg magic language that such language should be deemed contrary to public policy as addressed above. The court finds Time Warner’s arguments to be inconsistent and without merit.
While there may have been logistical reasons behind the scenes for the insertion of the magic language in Fallsburg in the first instance,[4] the court finds Fallsburg instructive, even if not formally controlling. This court gives great weight and deference to the PSC’s decisions and ruling because the legislature has determined that
“[t]he public service commission is the agency best suited to oversee development of the cable television industry in this state in accordance with a statewide service plan and consistent with state communications policy generally; [and] to review the suitability of practices for franchising cable television companies to protect the public interest” (Public Service Law § 211).
In this court’s view, following Fallsburg is consistent with the legislature’s policy and designation of the PSC as the agency designed to fulfill its policy statement as set forth in Public Service Law § 211.
Any remaining arguments not addressed herein are found to be without merit.
Conclusion
In view of the foregoing, the court finds as follows:
1. Plaintiffs’ motion is granted to the extent of finding that the effective dates of the franchise agreements shall be the dates of approval by the Town and Village, namely July 2, 2008 and July 15, 2008, respectively, with all other issues reserved for determination after an inquest on damages; and
2. Defendant’s cross motion is denied.

. At the parties’ request, on February 23, 2016, the court and counsel held one subsequent conference in an effort to reach a global settlement. Any briefs and/or correspondence submitted in connection with said conference were not considered in relation to this decision and order.

. It is undisputed that Time Warner drafted these franchise agreements and, as such, even if the court had found the effective date language to be ambiguous, it would have been construed against Time Warner as the drafter.

. At best, as a condition subsequent, the calculations of monies due could be delayed until PSC approval.

. One possibility of such logistical reasoning suggested by defendant’s counsel is the extreme time lag (eight years was apparently not atypical) that existed between dates of agreements and PSC approval in the era of the Fallsburg decision.